United States District Court
Southern District of Texas
**ENTERED**
January 29, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| A.T.N. INDUSTRIES, INC., *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-02743 |
| | § | |
| MAURICIO GROSS a/k/a GROSS DRACH, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Pending before the Court is the defendant, Rafael Schwartz's ("Schwartz"), motion to dismiss pursuant to 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 102).   The plaintiffs, A.T.N. Industries, Inc. ("ATN"), Jiafang Steel Pipes Americas, Inc. ("Jiafang"), and Joseph Benoudiz ("Benordiz") (collective, the "plaintiffs") have filed a response in opposition (Dkt. No. 108).   Upon leave of the Court, Schwartz has filed a reply in support of his motion (Dkt. No. 122).   After having carefully considered the motion, response, reply, and the applicable law, the Court determines that Schwartz's motion to dismiss should be **DENIED**.

### II.   FACTUAL OVERVIEW AND PROCEDURAL BACKGROUND

The plaintiffs assert as fact that Schwartz along with named defendants Mauricio Gross a/k/a Mauricio Gross Drach ("Gross"), Clara Gross a/k/a Clara Schwartz ("Mrs. Gross"), Volanss Systems Co., Limited ("Volanss"), Business Management Services Int. LLC ("BMSI"), Shumin Xu a/k/a Mina Xu ("Xu"), Seanway Pipe LLC ("Seanway"), Jiuyi Trading Co. ("Jiuyi"), Sheng Min Pipe Limited ("Sheng"), Shutien Jin ("Jin"), and Gulf Maritime Co., Limited ("Gulf Maritime") participated in "a massive scheme that defrauded Plaintiffs out of millions of dollars

from 2008 and 2014." The plaintiffs assert that the scheme was orchestrated by Gross, who was an employee of ATN and agent of Jiafang during the relevant time period. In his capacity, Gross had direct access to Jiafang's bank accounts. The plaintiffs further assert that the defendants, acting in concert, "created the defendant paper companies in Hong Kong, the United Kingdom, and Texas, to receive funds from the plaintiffs via the mails and the wires under fraudulent pretenses."

On September 24, 2014, the plaintiffs filed its original complaint against the defendants asserting violations for: (1) civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), (2) civil RICO conspiracy, (3) civil conspiracy, (4) money had and received, (5) aiding and abetting breach of fiduciary duty, (6) constructive trust, (7) resulting trust, and (8) fraudulent transfer under the Texas Business and Commercial Code. Schwartz was not named a party in the original complaint. The plaintiffs assert that Gross' sworn deposition testimony taken on November 7, 2014, revealed Schwartz's involvement in the alleged scheme and his connection to Houston. For example, Gross testified that, on one occasion, he withdrew $100,000 that was allegedly stolen from the plaintiffs from Volanss' bank account and hand delivered it to Schwartz in Houston. Gross also produced an audio recording of an August 1, 2014, meeting between Gross, Schwartz, and Benoudiz at the Houston George Bush Intercontinental Airport, were Benoudiz confronted the two with the information the plaintiffs uncovered concerning their suspected fraudulent activity. Likewise, Gross testified that shortly after the August 1, 2014, meeting, he closed certain bank accounts and transferred the balance to Schwartz. Overall, Gross testified that at least $800,000 of the funds allegedly stolen from the plaintiffs was transferred to Schwartz. The plaintiffs allege that the transfers were attempts to hide the funds from the plaintiffs in anticipation of litigation.

On January 30, 2015, the plaintiffs filed an amended complaint adding Schwartz as a defendant, including specific allegations concerning his involvement in the alleged scheme. Specifically, the plaintiffs amended complaint alleges that, "as Defendants' fraudulent scheme began to unravel,  Gross resigned form ATN, directed the closure of Volanns' Hong Kong bank accounts and transferred the balance of those accounts—approximately US $1.4 million—to his father-in-law  .  .  .   Schwartz."   Succinctly, the plaintiffs allege that the Court has personal jurisdiction over Schwartz based on the following:

> This Court also has personal jurisdiction over Defendant Schwartz because Schwartz traveled with Gross to Hong Kong to close bank accounts controlled by Gross that held funds stolen from Plaintiffs. Upon returning from Hong Kong, Schwartz received $450,000 of stolen funds from Gross in Houston, Texas and deposited the funds in a New York account with Israel Discount Bank under Schwartz's name in an effort to conceal the location and existence of the stolen funds from Plaintiffs.  Schwartz also participated in a telephone call in Houston, Texas with Plaintiffs regarding the fraudulent scheme carried out by Defendants. Specifically, Benoudiz called Gross to discuss a transaction involving Liaoning (a Chinese customer of Jiafang Americas), and Gross placed the call on speakerphone.  Gross' father-in-law, Schwartz, was present on the call, which is believed to have taken place in Houston. After Benoudiz told Gross that something was amiss and questioned Gross as to what was going on, Schwartz told Benoudiz to not worry about the $1,000,000 that was unaccounted for. For these reasons, and because the fraud was directed by Gross from his base of operations in Houston using fictitious company names registered in Texas for conducting fraudulent payments to bank accounts maintained in Texas under fraudulent fictitious names as the primary instrument to receive funds stolen from Plaintiffs through fraudulent means, Defendants have sufficient contacts with the State of Texas so as not to offend traditional due process notions of fair play and substantial justice. . . . At or around the time of that conversation, Gross travelled to Hong Kong with Schwartz, where the two closed Gross' and Volanns' Hong Kong bank accounts containing at least $1.4 million. While in Hong Kong, Gross transferred approximately $950,000 of the $1.4 million to Schwartz, and Schwartz deposed those funds in Hong Kong bank accounts with Standard Chartered and Citibank under Schwartz's name. When the two returned to Houston, Texas, Gross transferred the remaining $450,000 to Schwartz in person by check, and Schwartz deposited the funds in a New York account with Israel Discount Bank under Schwartz's name.  Gross and  Schwartz transferred the $1.4 million to Schwartz because they knew that Plaintiffs had become aware of Defendants' fraud and they were attempted to keep the stolen funds away from Gross as they were anticipating legal action.

The plaintiffs have asserted that shortly after Schwartz was named a party to the suit, they commenced efforts to serve him in Caracas, Venezuela. Based on the plaintiffs' declaration, they assert that four days after the Court issued a summons to Schwartz, on February 6, 2015, they sent the summons and amended complaint to a translation firm to translate the process from English to Spanish. On March 5 and 6, 2015, they received the translated summons and amended complaint from the translation firm. On March 23, 2015, the plaintiffs sent the translated documents to an international process-server to serve Schwartz pursuant to the Hague Convention. On August 4, 2015, Schwartz was served in Caracas, Venezuela, but the plaintiffs assert that Schwartz refused to sign the summons.

Because Schwartz refused to sign the summons, in order to complete service under the Hague Convention and Venezuelan law, the plaintiffs were required to constructively notify Schwartz of the suit against him. The plaintiffs complied through a Venezuelan court, on November 3, 2015 in Caracas, Venezuela, thus effectively serving Schwartz with process. On November 6, 2015, the plaintiffs' Venezuelan counsel petitioned the court for an order ratifying that service had been completed, declaring that the letters rogatory had been complied with to be forwarded to the Venezuelan Central Authority informing the U.S. Central Authority that Schwartz had been served. On November 22, 2015, the Venezuelan court signed a letter indicating that the letter rogatory had been "duly fulfilled" and the plaintiffs transmitted the file to the Venezuelan Central Authority. To date, the Venezuelan Central Authority has not tendered the certificate of service.

On August 24, 2015, Schwartz moved to dismiss the plaintiffs amended complaint against him pursuant to 12(b)(2), 12(b) (4), 12(b)(5) and 41(b) of the Federal Rules of Civil Procedure on the grounds that the plaintiffs unduly delayed service of process, and that the Court

did not have personal jurisdiction over him.  *See* (Dkt No. 83).  On October 22, 2015, the Court, having determined that the motion was "not ripe for adjudication," denied the motion without prejudice, and gave the plaintiffs 60 days from the date of the order to file proof of service. (Dkt. No. 90).

On October 22, 2015, Schwartz filed a motion for reconsideration of the order denying the initial motion to dismiss. (Dkt. No. 91).  On October 27, 2015, the Court denied the motion for reconsideration. (Dkt No. 95).  On November 24, 2015, the pending motion to dismiss followed.  On December 23, 2015, the Court took notice that Schwartz was personally served in Caracas, Venezuela, but granted the plaintiffs an additional 60 days to file the certificate of service in accordance with the Hague Convention.

## III.   STANDARD AND APPLICABLE LAW

### A.   Standard Under Fed. R. Civ. P. 12(b)(2)

Rule 12(b)(2) authorizes a motion to dismiss based on the defense that a court lacks jurisdiction over the defendant.  *See* FED R. CIV. P. 12(b)(2).  On such a motion, the plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant. *See Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir.1990).  Where a court rules on such a motion without a hearing, however, the court must accept, as true, all uncontroverted allegations in the plaintiff's complaint and resolve all factual conflicts presented by the parties' affidavits in the plaintiff's favor.  *Id.* at 217.  Thus, absent a hearing, the plaintiff need only establish a prima facie case for personal jurisdiction.  *Id.*  Nevertheless, after the plaintiff establishes its prima facie case, the burden then shifts to the non-resident defendant to demonstrate a "compelling case that the presence of some other consideration would render jurisdiction unreasonable."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

B.     **Standard Under Fed. R. Civ. P. 12(b)(5)**

Federal Rule of Civil Procedure 12(b)(5) authorizes the court to dismiss a case for "insufficient service of process."   Fed.R.Civ.P. 12(b)(5); *see also Kreimerman v. Casa Veerkamp, S.A. de C. V.*, 22 F.3d 634, 645 (5th Cir.), cert. denied, 513 U.S. 1016, 115 S.Ct. 577, 130 L.Ed.2d 492 (1994) ("A district court ... has broad discretion to dismiss an action for ineffective service of process.").   "When service of process is challenged, the serving party bears the burden of proving its validity or good cause for failure to effect timely service." *Sys. Signs Supplies v. U.S. Dep't of Justice, Wash., D.C.*, 903 F.2d 1011, 1013 (5th Cir.1990) (citing *Winters v. Teledyne Movible Offshore*, Inc., 776 F.2d 1304, 1305 (5th Cir.1985); *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. Unit A Jan.1981)).   In the Fifth Circuit, the standard for "good cause" requires a litigant "to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Sys. Signs Supplies*, 903 F.2d at 1013 (quoting *Winters*, 776 F.2d at 1306 (emphasis omitted)).   "In the absence of [proper] service of process (or waiver of service by the defendant), a court ordinarily may not exercise [jurisdiction] over a party the complaint names as a defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999).   "[T]o achieve proper service for purposes of Rule 12(b)(5), a party must follow the requirements of Rule 4 of the Federal Rules of Civil Procedure." *Rhodes v. J.P. Sauer & Sohn, Inc.*, 98 F. Supp .2d 746, 748–749 (W.D.La.2000).

Because this case involves service of process on a defendant located in a foreign country, the plaintiffs are required to comply with Rule 4(f) of the Federal Rules of Civil Procedure.  *See* FED. R. CIV. P. 4(h)(2).   In accordance with Rule 4(f), absent a waiver, service on a foreign defendant, such as Schwartz, may be effected "by any internationally agreed means reasonably

calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." FED. R. CIV. P. 4(f)(1).

The Hague Convention "is a multilateral treaty . . . intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S. Ct. 2104, 2107, 100 L.Ed.2d 722 (1988) (internal citations omitted). It serves as "the exclusive means of valid service" for entities in countries that are signatories to it. *Schlunk*, 486 U.S. at 706, 108 S. Ct. at 2111. "[C]ompliance with the [Hague] Convention is mandatory in all cases to which it applies." *Id.* at 705, 108 S. Ct. at 2111. Therefore, since the United States and Venezuela are both signatories to the Hague Convention, it governs service of process on Schwartz in this case.

"Articles 2 through 7 [of the Hague Convention] require each signatory nation to establish a 'Central Authority' to act as an agent to receive request of service, arrange for service of documents, and return proofs of service." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 383 (5th Cir. 2002). In accordance with Article 5, the Central Authority may require that the documents be translated into the official language of the country in which the party being served is located. Hague Convention, art. 5. Venezuela requires that the documents to be served be sent in duplicate and written or accompanied by a translation into Spanish. The documents to be served may always to be delivered to an addressee who accepts it voluntarily. *See* Hague Conference on Private International Law, "Venezuela – Central Authority and Practical Information," https://www.hcch.net/en/instruments/conventions/full-text/?cid=17 ("Venezuela - Central Authority"). Once a party is served, the Venezuela Central Authority must complete a certificate indicating that the documents have been serves, the method of service, the place and

dates of service, and the person whom the document was delivered.  If service is not completed, the certificate must set out the reasons which have prevented service.

Further, "[a]rticle 8 [of the Hague Convention] permits the use of diplomatic agents to serve foreign defendants [while] Article 9 permits diplomatic agents to forward documents to designated authorities in receiving nations who, in turn, effect service on the proper parties." *Nuovo Pignone*, 310 F.3d at 383.  Article 10 allows "the freedom to send judicial documents, by postal channels, directly to persons abroad."  *Id.*  Article 11 gives two or more signatories the ability to agree to other forms of service not otherwise enumerated in the Hague Convention.  *Id.* at n.13.

### C.    Standard Under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true."  *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)).  Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007).  Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the  . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964).

Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 - 65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)).

In *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). In this regard, its review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The Court may

also, however, "take judicial notice of documents in the public record . . . , and may consider such documents in determining a motion to dismiss." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 640 n. 2 (5th Cir. 2005) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 - 18 (5th Cir. 1996). "Such documents should be considered only for the purpose of determining what statements [they] contain, not to prove the truth of [their] contents." *Lovelace*, 78 F.3d at 1018 (internal citation omitted). "If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper." *Hall v. Hodgkins*, No. 08-40516, 2008 WL 5352000, *3 (5th Cir. Dec. 23, 2008) (citing *Kansa Reinsurance Co., Ltd. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

## IV.   CONTENTIONS OF THE PARTIES

### A.   Schwartz's Contentions

Schwartz renews his motion to dismiss this action against him with prejudice because the Court lacks personal jurisdiction over him and that the service of process is insufficient. Specifically, Schwartz argues that the plaintiffs have not established the requisite minimum contacts with the forum state to confer jurisdiction over him.  In addition, Schwartz argues that the plaintiffs have failed to exercise due diligence in effecting service of process and that the delay is unduly prejudicial.  Likewise, Schwartz claims that the delay in service mandates a procedural bar under the equitable laches doctrine.  Lastly, Schwartz argues that the plaintiffs' amended complaint fails to state a claim under which relief can be granted on the RICO claims and should be dismissed as a matter of law.

### B.   The Plaintiffs' Contentions

In response, the plaintiffs assert that the Court has personal jurisdiction over Schwartz because discovery evidence revealed that he availed himself to Texas by his involvement in the

alleged scheme.  In addition, the plaintiffs assert that Schwartz has been properly served and has showed diligence in obtaining the certificate of service from the Venezuela Central Authority in accordance with the Hague Convention.  Lastly, the plaintiffs aver that the Court should not consider Schwartz's 12(b)(6) claim because under Rule 12(g)(2) of the Federal Rules of Civil Procedure, he has effectively waived it by his failure to assert in his initial motion to dismiss.

## V.      ANALYSIS & DISCUSSION

### A.      Personal Jurisdiction over Schwartz

The Court holds that personal jurisdiction exist over Schwartz.  Generally, a federal court may exercise personal jurisdiction over a non-resident defendant if two conditions are met: (1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment of the *United States Constitution.  Irving v. Owens–Corning Fiberglas Corp.*, 864 F.2d 383, 385 (5th Cir. 1989) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1264 (5th Cir. 1983)).  This Court, however, need only consider whether the exercise of jurisdiction over the non-resident defendant comports with due process "because the Texas Supreme Court has [long] established that the Texas long-arm statute . . . 'reaches as far as the federal constitutional requirements of due process will permit.'" *Irving*, 864 F.2d at 385 (quoting *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex. 1985)).

"The Due Process Clause . . . permits the exercise of personal jurisdiction over a nonresident defendant when: (1) [the] defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over [the] defendant does not offend 'traditional notions of fair play and substantial justice.' " *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th

Cir. 2000) (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)) (internal citations omitted).  Both portions of this test must be satisfied in this case before the Court can exercise personal jurisdiction over a non-resident defendant.  *Ruston Gas Turbines, Inc. v. Donaldson Co.*, Inc., 9 F.3d 415, 418 (5th Cir. 1993).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).  Specific jurisdiction over a non-resident defendant is said to exist when the non-resident defendant has "purposefully directed its activities at the forum state and the 'litigation results from alleged injuries that 'arise out of or relate to' those activities.'" *Alpine View*, 205 F.3d at 215 (quoting *Burger King*, 471 U.S. at 472, 105 S. Ct. at 2174) (internal quotation marks omitted). General jurisdiction, on the other hand, is said to exist "where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action, are 'continuous and systematic.'" *Alpine View*, 205 F.3d at 215 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984)).  Nonetheless, even when "minimum contacts" are found, the court must still determine whether allowing such a suit would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S. Ct. 154, 90 L.Ed. 95 (1945).

Here, the plaintiffs rely on specific jurisdiction as the basis for maintaining their suit against Schwartz in Texas because of his alleged involvement in the "Texas-based scheme to defraud Plaintiffs out of millions of dollars."  The plaintiff bears the burden of establishing that this Court has personal jurisdiction over Schwartz, and the Court is of the opinion that burden is met by the plaintiff's pleadings, response, and supporting documents. *See Fielding v. Hubert Burda Medina, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005).  A review of the plaintiffs' pleadings

reveal that specific jurisdiction is present by the well-pleaded facts that Schwartz, who, "in concert with" Gross and others, "created the defendant paper companies in Hong Kong, the United Kingdom, and Texas, received funds from Plaintiffs via the mails and the wires under fraudulent pretenses."  Specifically, the plaintiffs allege that Schwartz participated in a phone call with Gross and Benoudiz, in which Schwartz intentionally concealed material information regarding over $1.4 million in stolen money.  The plaintiffs also allege that Schwartz received the stolen money in Houston.  As such, the plaintiffs allege that Schwartz received the money because he "knew that Plaintiffs had become aware of Defendant's fraud and were attempt[ing] to keep the stolen funds away from Gross as they were anticipating legal action."  Moreover, the plaintiffs allege that Schwartz was present at the August 1, 2014, meeting with Gross and Benoudiz that took place at the Houston George Bush International Airport, were Benoudiz confronted the two about the suspected fraudulent activity.

The plaintiffs claim that these allegations are substantiated by evidence produced in discovery.  "In considering a motion to dismiss for lack of personal jurisdiction a district court may consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'"  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).  Gross testified in his deposition that he personally handed Schwartz a $100,000 check of the alleged stolen funds in Houston.   He also testified that the last time he saw Schwartz, Schwartz was in Houston.  According to the declaration of Benoudiz, Gross produced an audio recording of the meeting at George Bush International Airport in Houston, which provides information that confirms Schwartz's knowledge and involvement in the scheme.  The plaintiffs allege that these facts are directly related to Schwartz's involvement in the alleged scheme that originated in Houston.  Taking the

plaintiffs allegations as true, they demonstrate that Schwartz purposefully directed his activities at the forum state and that the plaintiffs alleged injuries arose, in part, out of Schwartz's activities; thus, establishing minimum contacts with Texas.

Furthermore, the Court finds that the plaintiffs' suit against Schwartz does not offend traditional notions of fair play and substantial justice.  "In assessing fair play, courts balance (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiffs' interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 466-67, 105 S. Ct. 2174, 2179, 85 L. Ed. 2d 528 (1985).

Taking the plaintiffs allegations as true, it was foreseeable that a civil action would be brought in Texas given the origin of the alleged scheme.  The alleged stolen funds came from ATN, who is a Texas corporation and has its principle place of business in Houston.  Gross, who transferred the alleged stolen funds to Schwartz, was an employee of ATN during the time of the alleged scheme.   Gross testified that he hand delivered at least one check of the alleged stolen funds to Schwartz in Houston.   And, the recorded meeting discussing the unraveling of the alleged scheme, which Schwartz attended, occurred at the Houston George Bush Intercontinental Airport.  Thus, Schwartz could reasonably expect to be hauled into a Texas court.

While it is true that Schwartz may be burdened if subjected to jurisdiction in Texas. Balanced, however, against Texas' interest in litigating claims of harm to its residents, the plaintiffs' interest in litigating in the United States as opposed to Venuzuela, the judicial system's interest in resolving this case, and the interests of comity, jurisdiction is proper. *See Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty*., 480 U.S. 102, 114, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987) ("When minimum contacts have been established, often the

interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant."). Thus, the exercise of personal jurisdiction over Schwartz comports with traditional notions of fair play and substantial justice. Accordingly, the Court concludes that the plaintiffs have established a *prima facie* case for personal jurisdiction over Schwartz.

The burden now shifts to Schwartz to demonstrate a compelling case that the presence of some other consideration would render jurisdiction unreasonable. In an attempt to demonstrate unreasonableness, Schwartz claims that his only connection that the plaintiffs have alleged is his family relationship to the co-defendants. Schwartz is Gross' father-in-law, as Gross is legally married to his daughter. Likewise, Schwartz claims that the plaintiffs' assertion regarding his involvement in the alleged scheme is "bare speculation" and that his contacts with Texas were no more than "random, fortuitous or attenuated." The Court does not find these rebuttal arguments to be compelling as they do not controvert any factual allegations in the plaintiffs' complaint. And, as it has been detailed, a court must accept all uncontroverted allegations in the plaintiffs' complaint as true. *See Bullion*, 895 F.2d at 217.

Schwartz also argues that dismissal is appropriate based on the fact that "Benoudiz has threaten[ed] Schwartz with the loss of contact with his grandchildren and [that this suit is] an attempt to extort from Schwartz persuasion of his son-in-law to accede to Plaintiffs' monetary demands." [sic] The Court will not consider this argument as we are confined to evidence central to the claims alleged in the plaintiffs' complaint. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) ("[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") (citation omitted). If a court considers materials outside of the

pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c).  *Tuley v. Heyd*, 482 F.2d 590, 592 (5th Cir. 1973).  Thus, the Court finds this argument to be unavailing.  Accordingly, personal jurisdiction over Schwartz reasonably exists.

**B.    Service of Process on Schwartz**

Schwartz argues that dismissal is proper because the "Plaintiff have failed to show that they exercised due diligence in effecting service, and . . . the delay appears to have been intended to allow Benoudiz to attempt to extort submission of Defendants to the demands of the lawsuit." As such, Schwartz contends that a court of equity requires dismissal of the claims against him under the doctrine of laches.  The Court is not persuaded.  The Fifth Circuit has rejected dismissals expressly adopting a relaxed standard with regard to serving a defendant abroad. *Lozano v. Bosdet*, 693 F.3d 485, 488-89 (5th Cir. 2012) (quoting 1 Steven S. Gensler, *Federal Rules of Civil Procedure: Rules and Commentary* 60 (2012 ed.) ("most courts faced with a challenge to the timeliness of foreign service have applied a 'flexible due diligence' standard to determine whether the delay should be excused.")).  Additionally, lashes is a well-established equity principle that focuses on "one side's inaction and the other's legitimate reliance[.]"  *City of Sherrill, N.Y. v. Oneida Indian Nation of New York*, 544 U.S. 197, 217, 125 S. Ct. 1478, 1491, 161 L. Ed. 2d 386 (2005).

Here, while Schwartz argues that the delay in service is intentional, he does not appear to dispute the plaintiffs' response that the delay in service has been caused by Schwartz's refusal to sign the summons upon being personally served.  The plaintiffs have produced evidence to show diligence in serving Schwartz in Venezuela.  According to the sworn affidavit from the plaintiffs' process-server, Schwartz was personally served on August 5, 2015, but refused to sign the summons.  Because Schwartz refused to sign the summons, the Hague Convention demands

that the plaintiffs provide constructive notice to Schwartz through the Venezuelan courts.  The plaintiffs claim that they complied with the constructive notice requirement on November 3, 2015.   However, the plaintiffs are also required to comply with the Venezuelan Central Authority.  On November 6, 2015, the plaintiffs' Venezuelan counsel petitioned a court for an order declaring that the letters rogatory have been complied with, forwarding the notice to the Venezuelan Central Authority.  On November 22, 2015, a Venezuelan court signed an order reflecting that the letter rogatory concerning Schwartz had been fulfilled.  The order has been submitted to the Venezuelan Central Authority.  To date, the Venezuelan Central Authority have not tendered the certificate of service to be filed with this Court.

Taking the plaintiffs' claims as true, Schwartz cannot refuse to sign the summons requiring additional steps to be taken on one hand, and then avoid defending the case by dismissal on that basis.  Courts recognize that service pursuant to the Hague Convention may be a time-consuming process.  *See, e.g. Daly v. Llanes*, No. 98 CIV 1196 (AGS), 1999 WL 259507, at *2 (S.D.N.Y. Apr. 30, 1999); *Frederick v. Hydro-Aluminum S.A.*, 153 F.R.D. 120, 125 (E.D. Mich. 1994); *Itel Container Int'l Corp. v. Alanttrafik Express Service*, Ltd., 686 F.Supp. 438, 444 n.9 (S.D.N.Y.1988) ("service pursuant to the Hague Convention may be a time-consuming process even in an English-speaking jurisdiction . . . .").  Hence, the relaxed standard of due diligence is applied to cases involving service abroad.  Accordingly, this Court granted the plaintiffs additional time to file the certificate from the Venezuelan Central Authority.  Schwartz is not prejudiced by the additional time because he is fully aware of these proceedings and the delay could have been avoided by voluntarily accepting service—by signing the summons.  Therefore, the Court denies Schwartz's motion to dismiss for insufficient service of process.

### C.      Motion to Dismiss Pursuant to 12(b)(6)

Exactly three months after filing his initial motion to dismiss pursuant to Rule 12(b)(2), 12(b)(5), and 41(b), Schwartz filed a separate motion to dismiss renewing his 12(b)(2) and 12(b)(5) defenses as well as the newly alleged defense under 12(b)(6).   The Court is of the opinion that Schwartz waived any defense under 12(b)(6) by his failure to allege same in his initial motion to dismiss.   Rule 12(g)(2) of the Federal Rules of Civil Procedure states that a party that makes "[a] motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed.R.Civ.P. 12(g)(2).[1]   Because Schwartz filed a motion under Rule 12(b)(2) and 12(b)(5) based on the same set of facts forming the basis of his later 12(b)(6) motion, he is precluded from asserting a Rule 12(b)(6) defense.   Schwartz argues that his motion under 12(b)(6) is not waived and is appropriate for consideration because his "prior motion was ruled premature, and thus defenses were not 'available' in that motion for purposes of Rule 12(g)."   The Court finds this argument to be without merit.   As the plaintiffs correctly note, the 1966 amendment advisory committee notes to Rule 12(g) states that, "[t]his required consolidation of defenses and objections in a Rule 12 motion is salutary in that it works against piecemeal consideration of the case."   The essence of that advisory committee note speaks to the central issue presented here. Schwartz filed his initial motion to dismiss on August 24, 2015, raising 12(b)(2) and 12(b)(5) defenses.   Schwartz's second motion to dismiss was filed on November 24, 2015, renewing his 12(b)(2) and 12(b)(5) defenses as well as a 12(b)(6) defense.   No amended or supplemental pleadings were filed between Schwartz's motions to dismiss.   The relevant facts that Schwartz has lodged as a basis for his 12(b)(6) defense are as they existed at the time he filed his initial

---

[1] Rule 12(g)(2) contains exceptions that are not applicable here.

motion to dismiss.  Thus, the 12(b)(6) claim was available to Schwartz when he filed his initial

motion.  The Court's ruling on the initial motion has no bearing on the facts of Schwartz's

second motion.  To allow Schwartz to now bring this 12(b)(6) motion would be piecemeal,

which is what rule 12(g) is designed to prohibit.  Therefore, the Court strikes Schwartz's

12(b)(6) motion.

## VI.    CONCLUSION

Based on the foregoing analysis and discussion, Schwartz's motion to dismiss is

**DENIED**.

It is so **ORDERED**.

SIGNED on this 29th day of January, 2016.

Kenneth M. Hoyt
United States District Judge